# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 19-578

SCHANTELL D. WASHINGTON

VERSUS

THE BOARD OF SUPERVISORS FOR THE
UNIVERSITY OF LOUSIAIANA SYSTEM

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2018-3908
HONORABLE JULES D. EDWARDS, III, DISTRICT JUDGE

**********

## PHYLLIS M. KEATY
## JUDGE

**********

Court composed of Elizabeth A. Pickett, Phyllis M. Keaty, and John E. Conery, Judges.

**AFFIRMED.**

**G. Karl Bernard**
**G. Karl Bernard & Associates, LLC**
**1615 Poydras Street, Suite 101**
**New Orleans, Louisiana 70112**
**(504) 412-9953**
**Counsel for Plaintiff/Appellant:**
      **Schantell D. Washington**

**Jeff Landry**
**Attorney General**
**Stephen J. Oats**
**Cearley W. Fontenot**
**Special Assistant Attorneys General**
**Oats & Marino**
**100 East Vermilion Street, Suite 400**
**Lafayette, Louisiana  70501**
**(337) 233-1100**
**Counsel for Defendant/Appellee:**
  **The Board of Supervisors for the University of Louisiana System**

**KEATY, Judge.**

Plaintiff/Appellant, Schantell Washington, appeals the trial court's grant of summary judgment in favor of Defendant/Appellee, the Board of Supervisors for the University of Louisiana System. For the following reasons, the trial court's judgment is affirmed.

## FACTS & PROCEDURAL HISTORY

This case arises from the alleged discrimination of Plaintiff/Appellant, Schantell Washington, and alleged retaliation by her employer, Defendant/Appellee, the Board of Supervisors for the University of Louisiana System (hereinafter "the Board"). Washington, an African American female nurse, began working for the Board in 2014 at a medical clinic located on the University of Louisiana at Lafayette's (hereinafter "ULL") campus. After starting her job, Washington contends she was paid less than the previously agreed upon amount she was promised prior to accepting the position. Although the pay issue was corrected, she was later told by her supervisor that she could no longer take additional leave without pay. Washington thereafter met with human resources and claimed that she was being discriminated against by her supervisor because of Washington's race. Washington contends that after reporting her claim, her supervisor retaliated against her by extending her probationary period to 120 days and placing her on a Personal Improvement Plan ("PIP").

On March 9, 2017, Washington filed a Petition for Damages against the Board for racial discrimination and retaliation in violation of Louisiana Employment Discrimination Law, La.R.S. 23:301-369, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 ; 42 U.S.C. § 2000e-3. Therein, Washington stated that she previously filed a charge for racial discrimination with the Equal Employment Opportunity Commission ("EEOC") and received written notice of her right to sue.

The Board filed an answer to Washington's petition. On March 18, 2019, the Board filed a motion for summary judgment. In response, Washington filed the following: Plaintiff's Motion and Memorandum for Leave to File Memorandum in Opposition to Defendant's Motion for Summary Judgment Out of Time on May 14, 2019. The Board filed an opposition to Washington's motion for leave. The trial court signed an Order allowing Washington's untimely motion. A hearing on the motion for summary judgment occurred on May 20, 2019, where only counsel for the Board was present and presented oral argument. After considering the pleadings and the Board's oral argument, the trial court ruled in favor of the Board pursuant to its written Judgment on Rules signed that same day. Washington appeals the judgment.

On appeal, Washington asserts two assignments of error: (1) The trial court erred in granting summary judgment in favor of the Board with respect to her retaliation claim and (2) The trial court erred in granting summary judgment in favor of the Board with respect to Washington's breach of contract claim.

## STANDARD OF REVIEW

The standard of review utilized by an appellate court when reviewing a trial court's grant of a motion for summary judgment is de novo. *Duncan v. U.S.A.A. Ins. Co.*, 06-363 (La. 11/29/06), 950 So.2d 544. Under this standard, the appellate court uses the same criteria as the trial court in determining if summary judgment is appropriate pursuant to La.Code Civ.P. art. 966. *Id.* The criteria enunciated in La.Code Civ.P. art. 966(A)(3) provides that "a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." "A fact is 'material' when its existence or nonexistence may be essential to [a] plaintiff's cause of action under the applicable theory of recovery." *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d

2

730, 751. A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Id*.

Louisiana Code of Civil Procedure Article 966(D)(1) explains the mover's burden of proof on summary judgments as follows:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

## DISCUSSION

### I. First Assignment of Error

In her first assignment of error, Washington contends the trial court erred in granting summary judgment in favor of the Board with respect to her retaliation claims. Her retaliation claims arise from the alleged racial discrimination by her female Caucasian supervisor, Julia Lognion. After Washington reported Lognion's alleged discrimination to human resources, Washington contends Lognion retaliated against her because Washington was no longer allowed to take leave without pay, her probationary period was extended to 120 days, and she was placed on a PIP.

Washington's claims stem from Title VII of the Civil Rights Act of 1964, which forbids an employer from discriminating against "any individual" based upon that individual's "race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). The Act also contains an antiretaliation provision which prohibits an employer from "discriminat[ing] against" an employee or job applicant because that individual "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. 42

U.S.C. § 2000e-3(a). A prima facie case for retaliation is established when the plaintiff proves, by a preponderance of the evidence, that: "(1) she engaged in an activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse employment action." *Brooks v. S. Univ. & Agric. & Mech. Coll.*, 03-231, p. 48 (La.App. 4 Cir. 7/4/14), 877 So.2d 1194, 1221, *writ denied*, 04-2246 (La. 11/19/04), 888 So.2d 208.

In *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 126 S.Ct 2405, 2414 (La. 6/22/06), the Supreme Court explained that Title VII's substantive provision set forth in 42 U.S.C. § 2000e-2(a) and its antiretaliation provision set forth in 42 U.S.C. § 2000e-3(a) "are not coterminous." It explained that "[t]he scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *Id*. The Supreme Court noted that "[t]he antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Id*. The level of seriousness to which this harm must rise before it becomes actionable retaliation has been explained as follows: "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have []dissuaded a reasonable worker from making or supporting a charge of discrimination.[]'" *Id*. at 2415.

Initially, we will discuss the events, as alleged in Washington's petition and other deposition testimony in the record, that occurred prior to reporting the discrimination. According to the petition, Washington met with Lognion and Madeline Husbands in May 2014 to discuss a vacant nursing position at the clinic. The petition and deposition testimony in the record reveals that Husbands is Lognion's supervisor and Chief Operator of the clinic. During their meeting, Washington was promised that she would earn $26.00 per hour, be considered a ten-

4

month employee, and not have to work during the summer months of June and July. She contends that after beginning her employment in July 2014, she was paid $22.35 per hour rather than $26.00. When she raised the issue to Lognion, Washington was told that she was being adequately compensated regardless of the agreed upon rate. Washington's pay rate was corrected to $26.00 per hour after appealing to the Vice President of Student Affairs, Patricia Cottonham, in October 2014. Washington maintains that she has not been paid her agreed upon compensation rate for August, September, and October 2014.

Washington's petition alleges that in May 2015, Lognion informed Washington that she would have to work during June and July, contrary to the terms of her employment agreement. Washington suggested they meet with Cottonham to discuss the issue. Thereafter, Lognion retracted her demand and stated that Washington could have the upcoming summer off from work although Lognion would reevaluate Washington's future work schedule. Washington's petition alleges that on April 26, 2016, Husbands informed Washington that she would no longer be granted leave without pay, i.e., time off without using sick time or vacation time. One day later, Washington met with Stacy Robinette, a human resources specialist, who advised that company policy provides that leave without pay is granted by the employee's supervisor. Robinette noted that neither Washington's benefits nor her job was at risk. Washington told Robinette that her supervisor was treating her unfairly in comparison to her colleagues and disclosed all of the problems she previously experienced with Lognion. Robinette stated that she would contact Lognion to discuss the allegations. The petition further alleges that on May 2, 2016, Washington met with Lognion and Dr. Chris Hayes, the clinic's medical director. At this meeting, Lognion gave Washington a letter and a PIP regarding her attendance which explained that Lognion would not approve leave without pay

5

unless for a doctor's appointment or emergency reasons and required Washington to provide a written doctor's excuse upon returning to work.

At this juncture, we must determine whether Washington proved, by a preponderance of the evidence, a causal link between an adverse employment action, if any, and a protected activity. The record on review contains supporting documents attached to the motion for summary judgment, including the Board's responses to Washington's interrogatories, which provide: "Washington has not been disciplined for job performance reasons during the course and scope of her employment with Student Health Services for" ULL. The discovery responses state:

> On May 2, 2016, a Performance Improvement Plan [PIP] was completed for plaintiff that included duties and improvement required, expected outcomes, and support. She was counseled on excessive leave/absenteeism. A plan was established that included a requirement for a doctor's excuse for medical lea[v]e and no more LWOP would be approved by Lognion. Beginning in August 2016, she would be evaluated for a 90 day period to assess time and attendance. Support offered was Family Medical Leave Act if needed. . . .

> On May 2, 2016, [Washington] was counseled on her excessive absenteeism, 136.75 hours of leave in 2016 (January to April, 2016). Expectations for her improvement were established for Ms. Washington; no disciplinary action was taken.

Lognion's deposition testimony reveals that as Washington's supervisor, it was her job to call attention to Washington's excessive leave. Lognion explained that Washington was classified as a probational employee according to a Civil Service requirement that all new employees are on probation for up to two years. According to Lognion, a probationary employee fulfills their duties by showing up for work and performing their job. Lognion explained that probationary employees undergo yearly performance reviews to determine whether they are able to perform their job. Lognion testified that Washington missed 136.75 hours in three-and one-half months' time. According to Lognion, Washington's excessive leave created a problem by not showing up for work to perform her job.

6

Cottonham's deposition testimony reveals that human resources informed her that Washington "was not going to not have the time that she requested off." Cottonham, however, testified that "we resolved that" issue and Washington was allowed time off. Washington's deposition testimony reveals that she currently maintains her position at the clinic, she has never been denied leave, and that Lognion is no longer her supervisor due to her retirement.

Based upon the evidence in the record, Lognion was acting in her role as Washington's supervisor when pointing out Washington's excessive number of missed days. As a supervisor, Lognion informed Washington that she would be denied LWOP unless an emergency situation arose, or a doctor's excuse was provided. Lognion's recommendation regarding LWOP was never implemented because it was overruled by Cottonham. Washington's own testimony reveals that she was never denied leave. As such, we find that Washington failed to show, by a preponderance of the evidence, an adverse employment action causing injury or harm. Nor did Washington show a causal link between an adverse employment action and a protected activity.

Washington's petition further alleges that during her meeting on May 2, 2016 with Lognion and Dr. Hayes, she was "placed on probation for 120 days starting that day, during which she could not take any time off unless in the event of an emergency or for a doctor's appointment, also mandating that she provide a written excuse for any time missed." According to Washington's deposition testimony, she was removed from probation after the May 2 meeting. Cottonham's testimony reveals that she did not implement any of Lognion's recommendations made at the meeting on May 2, 2016. The Board's discovery responses state: "Washington has not been disciplined for job performance reasons during the course and scope of her employment with Student Health Services" for ULL.

Based on the evidence in the record on review, Washington was not placed on extended probation, as recommended by Lognion, following the May 2, 2016 meeting. Any recommendations made by Lognion at the meeting were overruled by Cottonham. Accordingly, we find that Washington failed to show, by a preponderance of the evidence, an adverse employment action causing injury or harm. Nor did Washington show a causal link between an adverse employment action and a protected activity.

Finally, Washington's petition addresses the issues of handwriting and administration of shots as noted in her PIP dated May 2, 2016. Washington alleges that none of her colleagues had been written up for their handwriting. According to the petition, Lognion falsely accused Washington of improperly administering an injection in April 2016.

The Board's discovery responses reveal that "[o]n September 9, 2015, Julia Lognion and Schantell Washington completed an incident report involving the wrong dosage of allergy serum. The patient was notified and advised what to do if experienced symptoms. Washington was not disciplined." The Board's discovery responses regarding the PIP explain that Washington "was also counseled on stocking forms, writing legibly, and administering injections pursuant to SHS medical guidelines. No disciplinary action was taken." The PIP in the record confirms the following issues were addressed: stocking forms, writing legibly, and administration of injections.

Cottonham's testimony reveals that the issues raised at the May 2, 2016 meeting, and included in the PIP, were resolved and any restrictions suggested by Lognion were not implemented. Specifically, when asked whether she stopped Washington from participating in the PIP, Cottonham responded: "I know that I determined that it would not be part of her permanent record." Cottonham was

questioned as to whether Washington had to fulfill the mandates of the particular requirements suggested by Lognion in the PIP. In response and with respect to the injection issue, Cottonham explained that Washington advised that she did not make a mistake such that Cottonham "had no reason not to believe her, and so [Cottonham] didn't want it to be part of her permanent record." Cottonham explained that the foregoing issues raised by Lognion, which were in writing and a part of Washington's record, were subsequently removed from Washington's record by Cottonham.

Based on the evidence in the record, Cottonham overruled any restrictions placed upon Washington, as written in the PIP and discussed at the May 2, 2016 meeting. Accordingly, we find that Washington failed to show, by a preponderance of the evidence, an adverse employment action causing injury or harm. Nor did Washington show a causal link between an adverse employment action and a protected activity.

## II. Second Assignment of Error

In her second assignment of error, Washington contends the trial court erred in granting summary judgment in favor of the Board with respect to her breach of contract claim. Washington contends that "[w]hile [she] was not allowed to amend her Petition to assert a claim for breach of contract, it was indeed her intention to do so[.]"

In Louisiana, amendments to petitions are governed by La.Code Civ.P. art. 1151, which provides, in pertinent part: "A plaintiff may amend his petition without leave of court at any time before the answer thereto is served. . . . Otherwise, the petition and answer may be amended only by leave of court or by written consent of the adverse party." La.Code Civ.P. art. 1151.

9

We find that Washington has failed to point to any evidence in the record where she amended, or attempted to amend, her petition to assert a breach of contract claim. Rather, the record shows that she initially made such allegation on May 14, 2019, in her untimely filed opposition to the Board's motion for summary judgment. The Board's motion for summary judgment was filed on March 18, 2019, approximately two years after March 9, 2017, the date Washington filed her petition. Thus, Washington had ample time to amend her petition to assert a breach of contract claim. Accordingly, this assignment of error is without merit.

## DECREE

For the foregoing reasons, the trial court's judgment is affirmed.

**AFFIRMED.**